# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SWANSON GROUP MFG. LLC, *et al..*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Case No. 15-1419 (RJL) |
| ) | |
| S.M.R. JEWELL, Secretary of Interior, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**FILED**
**JUN 2 8 2016**
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION

(June 28, 2016) [Dkts. ##11, 16]

This is the most recent iteration of cases before this Court involving timber sales in the Pacific Northwest and habitat for the northern spotted owl. Plaintiffs here seek declaratory and injunctive relief from injuries resulting from alleged violations of the Oregon and California Railroad and Coos Way Wagon Road Grant Lands Act of 1937 ("O&C Act"), 43 U.S.C § 1181a, and the Administrative Procedure Act, 5 U.S.C. §§ 551-706, by the Bureau of Land Management ("BLM"), the U.S. Fish and Wildlife Services ("FWS"), and the U.S. Forest Service concerning resource management and wildlife conservation. Corrected Compl. ("Corr. Compl.") ¶¶ 1, 97-119 [Dkt. #5]. On September 22, 2015, plaintiffs filed a Motion for Preliminary Injunction "to maintain the status quo that has existed since entry of the judgment in *Swanson I*, on June 26, 2013." Mot. for Prelim. Inj. 1 [Dkt. #11]. Defendants subsequently filed a Motion to Dismiss, asserting the case should be dismissed because it is barred by issue preclusion and, in the alternative, because plaintiffs lack standing. *See generally* Mot. to Dismiss Corr. Compl.

1

("Mot. to Dismiss") [Dkt. #16]. Upon due consideration of the parties' pleadings, the relevant law, and the entire record herein, I find that (1) plaintiffs American Forest Resource Council, Douglas Timber Operations, Swanson Group Manufacturing, Hull-Oaks Lumber Company, Seneca Jones Timber Company, Seneca Sawmill Company, and Freres Lumber Company are precluded from relitigating their standing in the instant case; (2) plaintiffs C&D Lumber Company, Starfire Lumber Company, Boise Cascade Wood Products, South Coast Lumber, Robert Ragon, Robert Freres, and Scott Keep fail to sufficiently allege standing; and (3) Rough & Ready is not barred by issue preclusion and sufficiently establishes standing for purposes of the motion to dismiss,[1] but does not meet the high burden required for a preliminary injunction. Accordingly, defendants' Motion to Dismiss is GRANTED in part and DENIED in part, and plaintiffs' Motion for Preliminary Injunction is DENIED.

## BACKGROUND

The slate upon which I write is far from clean. By plaintiffs' own admission, this action seeks to restate plaintiffs' claims from *Swanson Group Mfg. LLC v. Jewell*, No. 10cv1843 (filed on Oct. 29, 2010) ("*Swanson I*") and related claims from *Swanson Group Mfg. LLC v. Director*, No. 14-211 ("*Swanson II*") with new evidence regarding standing "to fill the gaps" identified by our Circuit Court in *Swanson I*. Mot. for Prelim. Inj. 1.

In *Swanson I*, I granted summary judgment in favor of the plaintiffs and found two

---

[1] Rough & Ready concedes dismissal of the two surviving claims challenging the formerly used Owl Estimation Methodology, *see infra* p. 13 (dismissing the Second and Third Claims for Relief), leaving its First and Fourth Claims for Relief.

2

federal agency actions to be unlawful: (1) the failure to offer for sale a declared amount of timber from two western Oregon districts, and (2) the development and use of an Owl Estimation Methodology. *See* Order and Mem. Op., No. 10-1843 [Dkts. ##58, 59]. That decision was appealed to our Circuit Court, which vacated the grant of summary judgment on the grounds that the plaintiffs in that case lacked Article III standing. *See Swanson Group Mfg. LLC, et al. v. Jewell, et al.*, No. 13-5268, 790 F.3d 235, 2015 WL 3634645, at *3 (D.C. Cir. June 12, 2015). Plaintiffs in *Swanson II*, No. 14-211, brought suit against the BLM making essentially the same allegations at issue in *Swanson I, i.e.* that defendant had failed to offer for sale the timber that it was required to offer for sale under the O&C Act. The *Swanson II* plaintiffs requested that this Court extend the reasoning of the vacated *Swanson I* summary judgment opinion to other Oregon districts that were not at issue in *Swanson I*. *See* Compl. ¶ 21, No. 14-211 [Dkt. #1].[2] On September 28, 2015, I dismissed *Swanson II*—along with two other related actions involving many of the same plaintiffs[3]—for lack of standing, in accord at ¶ance with our Circuit Court's opinion in *Swanson I*.

Currently before the Court are plaintiffs' Motion for Preliminary Injunction, and defendants' Motion to Dismiss, in which defendants argue that issue preclusion bars plaintiffs from relitigating standing and, regardless, plaintiffs lack standing. Given the overlapping and potentially dispositive issues, I address both motions herein.

---

[2] "The interpretation of the O & C Act set forth in the Memorandum Opinion and Order of June 26, 2013 in [*Swanson I*] applies to the BLM's management of its Coos Bay, Eugene, Lakeview and Salem districts in exactly the same manner as to the BLM's Medford and Roseburg districts."
[3] *See* Mem. Op., *Carpenters Indus. Council v. Jewell*, No. 13-361 [Dkt. #91]; Mem. Op., *Am. Forest Res. Council v. Jewell*, No. 14-368 [Dkt. #35].

3

## STANDARD OF REVIEW

The Court may dismiss a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), the court must "liberally" construe the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal citation and quotation marks omitted). However, in considering the pleadings, the Court is not required to "accept legal conclusions cast in the form of factual allegations," or to rely on inferences "unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Thus, to withstand dismissal, the allegations, when read in a light most favorable to the plaintiff, must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ANALYSIS

Four plaintiffs who were parties in both *Swanson I* and *Swanson II*,[4] along with seven other forest product manufacturers, a forest landowner, and three individuals, filed this case to restate their prior claims, this time with new allegations and declarations in an attempt to overcome the standing hurdle. Before reaching standing, however, I must address defendants' threshold argument that litigation of standing is barred by issue preclusion.

---

[4] Swanson Group Mfg. LLC, Rough & Ready LLC, American Forest Resource Council, and Douglas Timber Operators, Inc. were parties in *Swanson I* and *Swanson II*. There are four additional plaintiffs in the instant case who were parties in one of those two actions.

## A. Issue Preclusion Bars Seven of the Eight Plaintiffs from *Swanson I* and *Swanson II* from Relitigating Standing.

Issue preclusion, or collateral estoppel, bars "successive litigation of an issue of fact or law [1] actually litigated and [2] resolved in a valid court determination [3] essential to the prior judgment." *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001); *see also Taylor v. Sturgell*, 553 U.S. 880, 892 & n.5 (2008). The doctrine of issue preclusion serves to "protect against the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor*, 553 U.S. at 892 (alterations in original and internal quotation marks omitted). Our Circuit Court has found that issue preclusion applies to jurisdictional issues such as Article III standing. *See, e.g., Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 41 (D.C. Cir. 2015). "Because a jurisdictional dismissal does not involve an adjudication on the merits, it will not bar relitigation of the cause of action originally asserted, but it may preclude relitigation of the precise issues of jurisdiction adjudicated." *Id.* (internal quotation marks and alterations omitted).

A litigant can overcome issue preclusion under the curable defect exception. This narrow exception "allows relitigation of jurisdictional dismissals when 'a precondition requisite to the court's proceeding with the original suit was not alleged or proven, and is supplied in the second suit.'" *Id.* (quoting *Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1192 (D.C. Cir. 1983)). In other words, jurisdiction can be relitigated "only if a material change following dismissal cured the original jurisdictional deficiency." *Nat'l Ass'n of*

5

*Home Builders*, 786 F.3d at 41.

Eight plaintiffs—American Forest Resource Council, Douglas Timber Operations, Swanson Group Manufacturing, Hull-Oaks Lumber Company, Seneca Jones Timber Company, Seneca Sawmill Company, Freres Lumber Company, and Rough & Ready—were parties to either or both of the previously dismissed *Swanson I* and *Swanson II* cases, and cannot relitigate their standing here. In *National Association of Home Builders*, our Circuit Court set forth a two-step framework to determine whether a prior dismissal for lack of standing precludes relitigation of the same jurisdictional issue in a subsequent case. 786 F.3d at 41. First, the defendant has the burden to establish the elements of issue preclusion. *Id.* Second, the burden shifts to plaintiff to satisfy the curable defect exception. *Id.* If the defendant carries its burden and the plaintiff does not, the plaintiff is precluded from establishing standing and the plaintiff's case must be dismissed. *Id.* at 43.

The defendants have clearly established the elements of issue preclusion as to these eight plaintiffs. To begin, this case involves the same standing issue these companies previously litigated: whether plaintiffs have demonstrated an actual or imminent concrete economic injury as a result of the BLM's level of timber sales. *See Swanson II*, 2015 WL 5693429, at *4 (dismissing the case because, "just as in *Swanson I*, plaintiffs cannot show that any of their economic losses are traceable to the failure to offer for sale timber under the O&C Act instead of to an independent source, such as the recession, or that their prediction of future injury is more certain than those [the D.C. Circuit] has concluded are insufficient") (internal quotation marks omitted). This issue

was actually litigated and essential to the standing-based dismissals of the previous *Swanson* cases.[5] Plaintiffs miss the mark in arguing the standing issue here differs materially from that already litigated given the later time period. *See* Pls.' Mem. in Opp'n to Mot. to Dismiss Corr. Compl. ("Pls.' Opp'n") 14-17 [Dkt. #21]. Issue preclusion bars relitigation "even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892. Here, plaintiffs' claims that they will suffer imminent future injury rest on the same allegations of past economic injury that failed to establish Article III standing previously. Defs.' Reply in Supp. of Mot. to Dismiss Corrected Complaint ("Defs.' Reply") at 5 [Dkt. #22].

Unfortunately for seven of the eight returning plaintiffs, they do not evade dismissal under the curable defect exception. This narrow exception allows relitigation of jurisdiction "only if a material change following dismissal cured the original jurisdictional deficiency." *Nat'l Ass'n of Home Builders*, 786 F.3d at 41. With the exception of Rough & Ready, the returning plaintiffs fail to allege any material change that would establish standing. Plaintiffs argue that an injury that continues to occur after the entry of judgment constitutes a new injury post-dating such judgment, citing the current operating capacities and supply of timber as the new injuries here. Pls.' Opp'n 11-13. As defendants note, however, these "current" situations are not new injuries post-dating the *Swanson* dismissal, but rather are ongoing, pre-existing injuries. *See* Defs.' Reply 10. Because these injuries are the continuing result of the alleged timber shortage,

---

[5] For purposes of issue preclusion, it makes no difference that the prior cases were dismissed without prejudice. *See Dozier*, 702 F.2d at 1194.

7

American Forest Resource Council, Douglas Timber Operations, Swanson Group Manufacturing, Hull-Oaks Lumber Company, Seneca Jones Timber Company, Seneca Sawmill Company, and Freres Lumber Company do not satisfy the requirements for the curable defect exception.

### B. Rough & Ready Is the Only Returning Plaintiff That Overcomes Issue Preclusion Under the Curable Defect Exception.

Rough & Ready is the sole returning plaintiff that satisfies the curable defect exception. Issue preclusion can be overcome only if there is a material change that cures the jurisdictional defect. *See Nat'l Ass'n of Home Builders*, 786 F.3d at 41. To establish standing at the motion to dismiss stage, plaintiffs "must state a plausible claim that [they have] suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks and alterations omitted). In determining standing, the Court may consider materials outside of the complaint. *See Coal. for Underground Expansion v. Mineta,* 333 F.3d 193, 198 (D.C. Cir. 2003) ("[W]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record . . . .").

As our Circuit Court noted in its review of *Swanson I*, Rough & Ready came "closest to showing Article III standing." *Swanson Grp. Mfg. v. Jewell*, 790 F.3d 235,

242 (D.C. Cir. 2015). Our Circuit Court identified three jurisdictional defects: an "uncertain and unspecified" risk of closure, a lack of causal link to the BLM timber shortage, and likely redressability. *See id.* at 242-43. Rough & Ready has cured all three defects at this motion-to-dismiss stage.

The first defect, insufficient allegations of risk of closure, is cured by an undisputed new injury, the second closure. After the original judgment in *Swanson I*, the company was forced to close its doors. *See* Pls.' Opp'n 11. By July 2014, before our Circuit Court published its opinion, the company reopened. *See id.* At the inception of this case, Rough & Ready was "operating at 90 percent of [its] capacity" but "need[ed] additional new BLM ASQ timber sales this year and each year thereafter to be able to survive." *Id.* On February 25, 2016, plaintiffs moved for leave to file a supplemental declaration informing this Court that the company would close again "due to lack of adequate timber." Pls.' Mot. to File. Suppl. Decl., Ex. A ¶ 2 ("R&R Second Decl.") [Dkt. #26-1].[6] Defendants did not object to the filing of the declaration itself, but responded to the substance therein. Defs.' Resp. to Pls.' Mot. to File Suppl. Decl. [Dkt. #27]. I granted leave to file the supplemental declaration. *See* Minute Order, Mar. 9, 2016.

In the supplemental declaration, Rough & Ready President Link Phillippi averred that on February 12, 2016, he announced the company would again be closing due to lack

---

[6] "On February 12, 2016 I announced that Rough & Ready will again be closing due to lack of adequate timber supply. I was forced to terminate 20 of our 70 employees immediately, and to halt production at the sawmill. Our only activity currently is to complete the processing of lumber we have already cut and not yet prepared for sale, and to complete sales on our existing inventory of lumber. We expect to cease all operations and lay off an additional 42 employees in the next sixty days." R&R Second Decl. ¶ 2.

9

of adequate timber supply. R&R Second Decl. ¶ 2. He explained that in order to remain competitive, *i.e.* operate, the company must run two shifts each day and process 50-60 mmbf each year. *Id.* ¶ 3. The non-BLM timber only supplied 12.5 mmbf, and "the [BLM] is [Rough & Ready's] only potential source of the additional lumber [it] require[s] for 2016 (and subsequent years)." *Id.* The most recent closure and the corresponding timber supply analysis clearly post-date the original judgment in *Swanson I* and the dismissals in *Swanson II*, and thus constitute a "material change following dismissal." *Nat'l Ass'n of Home Builders*, 786 F.3d at 41. Moreover, the injury is no longer a risk of injury but now constitutes an actual, concrete, and particularized injury in fact that is not hypothetical or conjectural. *See Lujan*, 504 U.S. at 560; *see also Swanson Grp. Mfg. v. Jewell*, 790 F.3d at 243 (that Rough & Ready "may not" be able to continue operating and keep its work force employed was "the kind of uncertain and unspecific prediction of future harm that is inadequate to establish Article III standing[,]" noting "Phillippi never state[d] that Rough & Ready suffered any harm, much less had to lay off employees or close its mill").

The second defect, lack of causal link to the BLM shortage, is also cured by allegations of material change. The supplemental Rough & Ready declaration sets forth in great detail how much timber the company needs to operate, how much timber is provided by the non-BLM lands, how much more is needed, and where that timber could come from. R&R Second Decl. ¶ 3. In particular, Phillippi alleges Rough & Ready buys its timber from the Medford District alone and, to date, the Medford District has not

offered any timber sales or announced any upcoming sales for Fiscal Year 2016.[7] *Compare id.* ("[T]he Medford District . . . is our only potential source of the additional timber we require for 2016 (and subsequent years)."), *with Swanson Grp. Mfg. v. Jewell*, 790 F.3d at 243 (noting the previous Phillippi Declaration "d[id] not indicate the extent of Rough & Ready's reliance on timber purchased from Medford"). This sufficiently cures lack of a causal link at this stage.

The final jurisdictional defect, likely redressability, is also sufficiently cured by allegations at this stage. Defendants argue (1) this Court "cannot order BLM to offer timber sales immediately," (2) Rough & Ready "has not demonstrated that it would bid on those sales, let alone win them at a competitive auction," and (3) "Mr. Phillippi is not even sure Rough & Ready would reopen its mill." Defs.' Resp. to R&R Second Decl. 2-3. Defendants' first reason appears to relate to the argument that because the BLM has offered a total timber volume greater than the combined ASQ requirements for all six districts by selling non-ASQ timber, this Court cannot order additional sales of the ASQ timber. Defs.' Reply 22. But the plain text of the O&C Act requires the BLM to meet the ASQ requirements from the land designated "for permanent forest production." 43 U.S.C. § 1181(a). There is no exception allowing the BLM to supplement the

---

[7] Defendants argue that Rough & Ready actually gets its timber from Roseburg and Coos Bay Districts, citing the first Phillippi Declaration filed in this case and the denied plaintiffs' reply to defendants' response to the Court's order to show cause in *Swanson II*. Defs.' Reply 13. But these sources clearly show that Phillippi was quoting the Court's ordered relief for the Medford and Roseburg Districts in *Swanson I*, and that plaintiffs asserted that Rough & Ready's mill was located to "adjacent to" the Coos Bay District. *See* Phillippi Decl. ("R&R First Decl.") ¶ 15 [Dkt. #11-2]; Pls.' Reply to Defs.' Resp. to Show Cause Order 7, No. 14-211 [Dkt. #32-1]. To the extent there remains any issue of fact, the Court accepts the facts as alleged by plaintiff at this stage. *See Casey v. Ward*, 67 F. Supp. 3d 45, 49-50 (D.D.C. 2014).

11

shortage with timber from non-ASQ land. Moreover, the history of this case refutes defendants' contention, as I ordered the BLM to produce the ASQ from the ASQ lands in 2014, and the BLM complied. *See generally Swanson Grp. Mfg. LLC v. Salazar*, 951 F. Supp. 2d 75 (D.D.C. 2013); *see also* Bechdolt Decl., Table 1. Defendants' second argument, that Rough & Ready has not demonstrated it would bid on or win the timber, is belied by the allegations. Here, plaintiffs have alleged Rough & Ready has an "excellent" opportunity to purchase timber from BLM, given that a certain percentage of its timber sales is set aside for certified small businesses, and Rough & Ready is one of the few remaining such businesses in the lumber manufacturing field. *See* Corr. Compl. ¶¶ 14-19; Phillippi Decl. ("R&R First Decl.") ¶¶ 4-5 [Dkt. #11-2].

Defendants' final argument, that Rough & Ready may not reopen the mill, is a closer call, but as a whole plaintiffs' allegations suffice to pass muster at this stage.[8] Here, Phillippi avers that "[i]f and when in the future the Medford BLM District reliably offers its full ASQ of timber sales annually, we hope to be able to reopen the mill and resume operations." R&R Second Decl. ¶ 3. In previous filings in this case, however, Rough & Ready has maintained that it "occupies a particular niche" because of its unique products, it "has longstanding relationships with its major customers, and can reliably sell all the products," and, by virtue of the New Market Tax Credit program, it has even upgraded its mill to process the smaller diameter logs that are primarily offered by the

---

[8] As explained more fully in the standing section, at the motion to dismiss stage the plaintiff must demonstrate that the injury is "likely" redressed by a favorable decision on the merits, as opposed to the more exacting standard of "substantial" likelihood required at the summary judgment or preliminary injunction stage. *See Lujan*, 504 U.S. at 561; *Food & Water Watch, Inc.*, 808 F.3d at 912-13.

12

BLM. *See* R&R First Decl. ¶¶ 2, 8 ("Lack of demand is not and never was a limitation . . . ."); *see also* Corr. Compl. ¶¶ 12, 18. Moreover, Rough & Ready has demonstrated its capacity to reopen its doors after closing once before when such timber became available. R&R First Decl. ¶ 9. Taken as a whole, these allegations establish that Rough & Ready's injury is likely redressed by a favorable decision on the merits.

Rough & Ready has sufficiently established standing for purposes of the motion to dismiss, but concedes dismissal of two of its four claims. The Second and Third Claims for Relief challenge the Owl Estimation Methodology previously used by defendants. *See* Corr. Compl. 48-51 (Second Claim for Relief), 51-53 (Third Claim for Relief). Based on defendants' representations that the Owl Estimation Methodology is not currently in use and will not again be put into use in the future, plaintiffs concede dismissal of these claims without prejudice. Pls.' Opp'n 37. Accordingly, Rough & Ready's Second and Third Claims for Relief are dismissed as conceded, leaving its First and Fourth Claims for Relief as its existing claims going forward.

### C. All Non-Returning Plaintiffs Lack Standing.

Defendants argue that issue preclusion applies more broadly to bar *all* plaintiffs from litigating standing on the grounds that they are "in privity with" the returning plaintiffs from *Swanson I* and *Swanson II*, Mot. to Dismiss 20, but I decline to wade into this thorny thicket. Preclusion of non-parties implicates serious due process concerns and "runs up against the 'deep-rooted historic tradition that everyone should have his own day in court." *Taylor*, 553 U.S. at 892-93. Accordingly, the Supreme Court has carefully

delineated six narrow exceptions to the general rule against non-party preclusion.[9] *Id.* at 892-93. Defendants appear to argue that the non-party plaintiffs are precluded under the *Taylor* Court's fifth exception for designated representatives, agents, or proxies.[10] *Id.* at 895. Though framed as an issue of privity, the theory seems to be that the non-parties are precluded from litigating their own standing here because they designated the returning plaintiffs as their representatives in the previous actions, based on their relationships with returning plaintiffs and varying levels of participation in the prior cases. Mot. to Dismiss 20-21. I need not address these arguments, however, because the non-party plaintiffs fail to allege standing sufficient to overcome defendants' motion to dismiss.

"Article III of the Constitution confines the jurisdiction of the federal courts to actual 'Cases' and 'Controversies,' and . . . 'the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process.'" *Clinton v. City of New York*, 524 U.S. 417, 429-30 (1998) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Plaintiffs bear the burden of demonstrating they have standing to pursue their claims. *See Lujan*, 504 U.S. at 561. "[T]he irreducible constitutional minimum of standing" requires "[1] an injury in fact . . . which is (a) concrete and

---

[9] The exceptions consist of non-parties who (1) agree to be bound by the previous action, (2) had a pre-existing substantive legal relationship with a party to the previous action (focusing on relationships arising out of property law, such as bailee and bailor), (3) were represented in properly conducted class actions and suits brought by trustees, guardians, and other fiduciaries, (4) assumed control over the previous action, effectively driving the argument and theory of the case, (5) act as designated representatives, proxies, or agents of a party to the previous action to avoid preclusion, and (6) fall under special statutory schemes such as bankruptcy and probate proceedings. *Id.* at 893-95.

[10] Defendants style their argument as one of "privity," but the Supreme Court specifically declined to use the term "privity" in this context to prevent confusion, as it is commonly used to encompass a variety of legal relationships. *Taylor*, 553 U.S. at n.8

14

particularized, and (b) actual or imminent, not conjectural or hypothetical, . . . [2] a causal connection between the injury and the conduct complained of . . . , [and] [3] it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560-61 (footnote, citations, and internal quotation marks omitted).

Furthermore, because the plaintiffs here seek injunctive relief, they must show an imminent future injury. *See Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011). This requirement creates "'a significantly more rigorous burden to establish standing'" than that on parties seeking redress for past injuries. *Chamber of Commerce v. EPA*, 642 F.3d 192, 200 (D.C. Cir. 2011) (quoting *United Transp. Union v. ICC*, 891 F.2d 908, 913 (D.C. Cir. 1989)). That is, "to 'shift[ ] injury from conjectural to imminent,' the [plaintiffs] must show that there is a 'substantial . . . probability' of injury." *Id.* (first alteration in original) (quoting *Sherley v. Sebelius*, 610 F.3d 69, 74 (D.C. Cir. 2010)) (internal quotation marks omitted).

There are four non-returning company plaintiffs: C&D Lumber Company, Starfire Lumber Company, Boise Cascade Wood Products, and South Coast Lumber.[11] Each fails to adequately allege standing. These plaintiffs assert economic injuries from lack of sales, each alleging it relies on BLM timber, and that the current shortage thereof prevents is preventing the companies from operating at full capacity. *See* Corr. Compl.

---

[11] Though not parties themselves to either *Swanson I* or *Swanson II*, C&D Lumber Company and Starfire Lumber Company are members of returning plaintiff organizations American Forest Resource Council, Douglas Timber Operations.

¶¶ 45-49 (Starfire Lumber Company), 50-51, 54 (C&D Lumber Company), 55-56 (South Coast Lumber), 58-60, 63 (Boise Cascade Wood Products). Unfortunately for these plaintiffs, they have failed to allege a substantial probability of an imminent future injury, let alone an actual ongoing injury that is fairly traceable to the BLM's refusal to offer ASQ timber. Unlike Rough & Ready, these companies have not specified how much timber they can purchase from the various other sources, or plausible reasons why those sources will not suffice. It is unclear that the BLM's failure to provide ASQ timber is the cause of their revenue shortages, or that an order compelling the sale of ASQ timber would likely redress them.

Plaintiff companies also allege that they are injured by imminent risk of wildfire starting on mismanaged BLM timberlands and spreading to bordering timberland owned or used by various plaintiffs. *See, e.g.*, Corr. Compl. ¶¶ 38, 54, 61, 68. Unfortunately for plaintiffs, their allegations do not adequately support this theory of standing either. Although plaintiffs have generally identified which lands border the BLM timberlands, *see, e.g.*, Corr. Compl. ¶¶ 61, 64, plaintiffs have not indicated the precise location of those lands or how much of them, if any, are ASQ-specific land. Relatedly, and perhaps most importantly, there are no allegations that the relief sought—ordering the BLM to sell ASQ timber in compliance with the O&C Act—would lower the risk in these specific areas. Accordingly, these plaintiff companies have not sufficiently alleged standing.

In addition to the non-returning company plaintiffs, and unlike the previous *Swanson* cases, this case includes three individual plaintiffs. Plaintiff Robert Ragon, the Executive Director of Douglas Timber Operators, Inc., filed declarations in the previous

16

cases in his official capacity, but was not a plaintiff. *See, e.g.*, Ragon Decl., No. 10-1843 [Dkt. #41-7]; Ragon Decl., No. 14-211 [Dkt. #17-2]. Plaintiff Robert Freres, Jr., Executive Vice President of Freres Lumber Co., also previously filed declarations in his official capacity but was not a prior plaintiff. *See, e.g.*, Freres Decl., No. 14-211 [Dkt. #17-4]. The third individual plaintiff, Scott Keep, is an employee of plaintiff Seneca Sawmill Company and had not previously filed any declarations, nor had he been a plaintiff in the previous *Swanson* cases. Corr. Compl. ¶ 28.

Each of the individual plaintiffs fails to sufficiently allege standing. All three individuals allege they enjoy hunting, fishing, and engaging in other recreation on timberlands that border BLM lands. Corr. Compl. ¶¶ 28, 38, 64. They allege injury from an increased risk of wildfire caused by BLM's mismanagement of its timberland and spreading to the bordering non-BLM land, which threatens their recreational activity. *See id.*; *see also* Ragon Decl. ¶ 3 [Dkt. #11-10]; Freres Decl. ¶ 15 [Dkt. #11-4]; Keep Decl. ¶ 2 [Dkt. #11-9] (alleging recreational interests, but no injury). Thus, although the individuals allege recreational interests separate and apart from their employers, their purported injury to those interests is based on the same alleged increased risks of wildfire addressed above. The individual plaintiffs' conclusory allegations of risk of wildfire fail to establish standing for the same reasons as the company plaintiffs.

### D. Rough & Ready Fails to Satisfy the High Burden Required for a Preliminary Injunction.

The sole plaintiff that overcomes the dismissal hurdle, Rough & Ready, is unable to satisfy the higher burden required to obtain a preliminary injunction. When ruling on a

motion for preliminary injunction, a court must consider "whether (1) the plaintiff has a substantial likelihood of success on the merits; (2) the plaintiff would suffer irreparable injury were an injunction not granted; (3) an injunction would substantially injure other interested parties; and (4) the grant of an injunction would further the public interest." *Sottera, Inc. v. Food & Drug Admin.*, 627 F.3d 891, 893 (D.C. Cir. 2010) (internal quotation marks omitted). I begin, and end, with consideration of whether Rough & Ready has established substantial likelihood of success on the merits. I find it has not.

The "affirmative burden of showing a [substantial] likelihood of success on the merits . . . necessarily includes a likelihood of the court's *reaching* the merits, which in turn depends on a [substantial] likelihood that plaintiff has standing." *Nat'l Wildlife Fed'n v. Burford,* 835 F.2d 305, 328 (D.C. Cir. 1987) (Williams, J., concurring and dissenting). "Accordingly, a party who seeks a preliminary injunction must show a substantial likelihood of standing." *Food & Water Watch, Inc.*, 808 F.3d at 913 (internal quotation marks omitted). A party who fails to show a "substantial likelihood" of standing is not entitled to a preliminary injunction. *Id.* (quoting *Obama v. Klayman,* 800 F.3d 559, 568 (D.C. Cir. 2015) (Williams, J.)).

While the allegations supporting Rough & Ready's standing suffice to satisfy the lower "likely" standard required at motion-to-dismiss phase, they fail to rise to the level of the "substantial likelihood" required at the preliminary injunction phase. *See Food & Water Watch, Inc.*, 808 F.3d at 912-13. In particular, although Rough & Ready plausibly claims that its injuries are likely redressable as described above, its "hope to be able to reopen the mill and resume operations" if and when the BLM offers its full ASQ of

18

timber sales is insufficient to establish *substantial* likelihood of redressability. R&R Second Decl. ¶ 3. That is, while the various allegations taken as a whole establish Rough & Ready's injuries are likely redressable, they simply fail to provide the basis necessary to establish the requisite substantial likelihood. Accordingly, Rough & Ready survives the motion to dismiss, but fails to satisfy the high burden required to obtain a preliminary injunction at this time.

## CONCLUSION

Thus, for all the reasons stated herein, defendants' motion to dismiss is GRANTED as to all plaintiffs other than Rough & Ready, GRANTED in part and DENIED in part as to Rough & Ready, and plaintiffs' Motion for Preliminary Injunction is DENIED. A separate Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge