UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SWANSON GROUP MFG. LLC, *et al.*,  )
                                    )
      Plaintiffs,                )
                                    )
v.                                  ) Civil Case No. 15-1419 (RJL)
                                    )
DAVID L. BERNHARDT, Secretary of    )
the Interior,                       )
                                    )      **FILED**
      Defendant.                 )      SEP 3 0 2019
                                    
MEMORANDUM OPINION

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

(September 29, 2019) [Dkt. ## 54, 57]

In the Oregon and California Railroad and Coos Bay Wagon Road Grant Lands Act of 1937, 43 U.S.C. §§ 2601–05 ("the O&C Act"), Congress mandated that the Department of the Interior must sell or offer for sale, every year, timber from land subject to the Act in an amount "not less than the annual sustained yield capacity [of the land] when the same has been determined and declared." *Id.* § 2601. Plaintiffs Starfire Lumber Company and South Coast Lumber Company[1] (collectively, "plaintiffs") allege that the Bureau of Land

---

[1] Additional plaintiffs were named in the complaint, but Starfire Lumber Company and South Coast Lumber Company are the only two that remain in this suit. On June 28, 2016, I dismissed the American Forest Resource Council, Douglas Timber Operators, Swanson Group Manufacturing, Hull-Oaks Lumber Company, Seneca Jones Timber Company, Seneca Sawmill Company, Freres Lumber Company, C & D Lumber Company, Starfire Lumber Company, Boise Cascade Wood Products, South Coast Lumber Company, Robert Ragon, Scott Keep, and Robert Freres, Jr. for failure to satisfy Article III's standing requirements. *See Swanson Grp. Mfg. LLC v. Jewell*, 195 F. Supp. 3d 66, 72–79 (D.D.C. 2016) ("*Swanson IV*"). After a change in the governing law, several of the dismissed plaintiffs moved for reconsideration. I granted that motion in part, reinstating only Starfire and South Coast. *See* Mem. Order at 4 (Sept. 29, 2017) [Dkt # 52]. In their Motion for Summary Judgment, plaintiffs seek to, again, relitigate standing for several of the previously dismissed parties. But because two plaintiffs were already reinstated and have standing to press the claims at issue, I "need not address whether the other plaintiffs have standing" as well. *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 9 (D.C. Cir. 2017); *see also Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1232 (D.C. Cir. 1996) ("For each claim, if constitutional and prudential standing

1

Management ("BLM"), the agency within the Department of the Interior responsible for administering O&C land, routinely violates this timber sale mandate. They sued the Secretary of the Interior[2] ("defendant"), seeking to compel his compliance with the O&C Act, and have now moved for summary judgment. Defendant cross-moved for judgment in its favor. Because I conclude that BLM has violated the O&C Act, and for all of the reasons that follow, plaintiffs' motion will be GRANTED IN PART, and defendant's cross-motion will be DENIED.

## BACKGROUND

"The O&C Act governs BLM's management of approximately two million acres of land in western Oregon . . . ." *Am. Forest Res. Council v. Steed*, No. 16-1599, 2019 WL 1440887, at *2 (D.D.C. Mar. 31, 2019). Timberland subject to the Act must "be managed . . . for permanent forest production." 43 U.S.C. § 2601. And every year, timber that is grown on O&C land must be sold or offered for sale. In the O&C Act, Congress provides that "timber . . . in an amount not less than one-half billion feet board measure, or not less than the annual sustained yield capacity when the same has been determined and declared, shall be sold annually, or so much thereof as can be sold at reasonable prices on a normal market." *Id.*

BLM is the federal agency responsible both for "determin[ing] and declar[ing]" the O&C land's "annual sustained yield capacity," 43 U.S.C. § 2601, and for administering the

---

can be shown for at least one plaintiff, we need not consider the standing of the other plaintiffs to raise that claim."). I decline to do so here.

[2] The Secretary of the Interior was named as the defendant in his official capacity as the official who oversees BLM. *See* Corrected Compl. ¶¶ 1, 69 [Dkt. # 5].

2

required timber sales. *See* U.S. Dep't of the Interior, BLM, *O&C Sustained Yield Act: the Land, the Law, the Legacy (1937-1987)* at 13–15, 17, *available at* https://www.blm.gov/or/files/OC_History.pdf. In 1995, BLM issued resource management plans ("the 1995 RMPs") that divided O&C land into five districts and one resource planning area. *See* Administrative Record ("AR") at AR_20459; AR_20528–529; AR_20582; AR_20687; AR_20758; AR_20947; AR_21041; AR_21232; AR_21250; AR_21585; AR_21663; AR_21842; AR_21900 [Dkt. # 64]. The 1995 RMPs then declared a base allowable sale quantity ("ASQ") for each district or area. *See* AR_20528; AR_20758; AR_21041; AR_21250; AR_21663; AR_21900. Defendant represents that BLM uses the term "ASQ" synonymously with "annual sustained yield capacity," the phrase that appears in the O&C Act's timber sale mandate. *See* Fed. Def.'s Cross-Mot. Summ. J. at 4 [Dkt. # 57]. But BLM also cautions that the ASQs declared in the 1995 RMPs are merely "estimate[s] of annual average timber sale volume likely to be achieved from lands allocated to planned, sustainable harvest." AR_20528. The 1995 RMPs provide that "[t]he actual sustainable timber sale level . . . may deviate by as much as 20 percent from the identified [ASQ]." AR_20529.

The 1995 RMPs remained in effect through 2015, when this suit was filed. The next year, however, BLM adopted new resource management plans ("the 2016 RMPs") with adjusted base ASQs. *See* Northwestern & Coastal Oregon Record of Decision ("NCO ROD") at 6 [Dkt. # 57-5]; Southwestern Oregon Record of Decision ("SWO ROD") at 5 [Dkt. # 57-6]. The new RMPs increased the extent to which BLM could deviate from the base ASQs in a given year, permitting "as much as 40 percent variation on an annual basis."

3

NCO ROD at 6; *see also* SWO ROD at 6. But they required BLM to maintain harvest levels within 20% or 30% of the ASQs—depending on the district—over the course of a decade. *See* NCO ROD at 6; SWO ROD at 6.

Plaintiffs purchase timber grown on land subject to the O&C Act and use the timber to produce forest products. BLM's annual sustained yield capacity declarations, therefore, affect the timber supply available to plaintiffs, and BLM's failure to offer for sale a volume of timber commensurate with those declarations harms plaintiffs' businesses. As a factual matter, there is little dispute that such failures have occurred. BLM has "acknowledged a shortfall in timber volume offered" for sale as a "result of unforeseen circumstances and shortcomings in the 1995 RMPs." Decl. of Richard Hardt in Supp. of Fed. Def.'s Cross-Mot. Summ. J. ("Hardt Decl.") ¶ 2 [Dkt. # 57-7]. In Counts One and Four of the operative complaint,[3] plaintiffs allege that BLM violates the O&C Act and the Administrative Procedure Act, 5 U.S.C. § 706 ("the APA"), every year that annual timber offerings are less than the declared annual sustained yield capacity. *See* Corrected Compl. ¶¶ 97–101, 117–119.

This is not the first time plaintiffs have sued to challenge a shortfall in O&C timber sales. By their "own admission, this action seeks to restate plaintiffs' claims from *Swanson Group Mfg. LLC v. Jewell*, No. 10cv1843 (filed on Oct. 29, 2010) ('*Swanson I*') and related claims from *Swanson Group Mfg. LLC v. Director*, No. 14-211, 2015 WL 5693429 (D.D.C.

---

[3] At the outset of this case, plaintiffs also raised two additional claims, in which they challenged defendant's methodology for estimating the number of Northern Spotted Owls affected by O&C timber sales. Those claims—Counts Two and Three—have been dismissed. *See Swanson IV*, 195 F. Supp. 3d at 76.

4

2015) ("*Swanson II*") with new evidence regarding standing." *Swanson IV*, 195 F. Supp. 3d at 71.

Nor is this the first time I have been confronted with a motion for summary judgment on these claims. "In *Swanson I*, I granted summary judgment in favor of the plaintiffs," after determining that BLM's "failure to offer for sale a declared amount of timber from two western Oregon districts" was unlawful. *Swanson IV*, 195 F. Supp. 3d at 71. In *Swanson II*, plaintiffs sought to extend the holding from *Swanson I* to timber sales in additional O&C districts. *See id.* But before *Swanson II* could be resolved on the merits, our Circuit Court dismissed the *Swanson I* complaint, reasoning that plaintiffs lacked Article III standing. *See Swanson Group Mfg. LLC v. Jewell*, 790 F.3d 235, 239–40 (D.C. Cir. 2015) ("*Swanson III*"). In accordance with the Circuit Court's decision, I then dismissed *Swanson II* on the same grounds. *See Swanson II*, 2015 WL 5693429, at *4. In response, plaintiffs reasserted their claims in this suit with their "new evidence regarding standing." *Swanson IV*, 195 F. Supp. 3d at 71.

Plaintiffs have now moved for summary judgment on the reasserted claims. Defendant responded with a cross-motion for summary judgment in its favor. Both motions are ripe for resolution.

## STANDARD OF REVIEW

Summary judgment is appropriate when no genuine dispute exists as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). In the context of agency review, "[s]ummary judgment . . . serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the

administrative record and otherwise consistent with the APA standard of review." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006). Agency actions do not satisfy the APA standard of review when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## ANALYSIS

In *Swanson I*, I determined that the timber sale mandate in the O&C Act "conveys a clear requirement: once BLM declares an annual sustained yield capacity, it *must* sell that amount [of timber] or so much thereof as can be sold at reasonable prices on a normal market" every year. 951 F. Supp. 2d 75, 81–82 (D.D.C. 2013). My determination followed directly from the statutory language. "Under the O & C Act, '[t]he annual productive capacity for [O&C] lands *shall* be determined and declared . . . [and] timber from said lands in an amount not less than one-half billion feet board measure, or not less than the annual sustained yield capacity when the same has been determined and declared, *shall* be sold annually, or so much thereof as can be sold at reasonable prices on a normal market.'" *Id.* (quoting 43 U.S.C. § 1181a, now codified at 43 U.S.C. § 2601 (second alteration added; emphasis in *Swanson I*)). These are mandatory directives: Congress decreed that the Department of the Interior "shall" declare a sustained yield capacity and "shall" sell or offer for sale annually an amount of timber that is not less than that declared capacity. 43 U.S.C. § 2601; *see Swanson I*, 951 F. Supp. 2d at 81 (citing *Allied Pilots Ass'n v. Pension Benefit Guar. Corp.*, 334 F.3d 93, 98 (D.C. Cir. 2003) for "the well-recognized principle that the word 'shall' is ordinarily the language of command"). "[S]hall," I explained in *Swanson I*, "means shall." 951 F. Supp. 2d at 82 (quotation marks omitted).

Defendant disputes this. It argues that the timber sale mandate in the O&C Act imposes no non-discretionary duty on BLM. But this reading of the Act is contrary to the straightforward interpretation of the statutory language in *Swanson I*, and nothing has changed since *Swanson I* issued that affects the analysis. The relevant text of the O&C Act, including its mandatory language, remains the same. *See* 43 U.S.C. § 2601. That text still "conveys a clear requirement." *Swanson I*, 951 F. Supp. 2d at 81. And shall still means and shall. *Swanson I* was vacated on standing grounds, but the Circuit Court said nothing in its opinion that calls into question the plain-language-reading of the O&C Act on which the merits analysis was based. *See generally Swanson III*, 790 F.3d at 235–46. Accordingly, the parties' dispute over the meaning of the timber sale mandate in this case must be resolved the same way it was resolved in *Swanson I*. Every year, BLM *is required* to sell or offer for sale an amount of timber that is not less than the declared annual sustained yield capacity of the timberland subject to the O&C Act. *See* 43 U.S.C. § 2601; *Swanson I*, 951 F. Supp. 2d at 81–82.

Defendant also argues that courts lack the power to review or remedy a violation of the O&C Act's timber sale mandate, but these contentions were likewise raised and resolved in *Swanson I*. There, I held that "the [O&C] Act clearly compels BLM to offer for sale the annual sustained yield capacity," and the "mandate is sufficiently discrete to warrant judicial review and enforcement." *Swanson I*, 951 F. Supp. 2d at 83; *cf. Habitat Educ. Ctr. v. U.S. Forest Serv.*, 609 F.3d 897, 899–904 (7th Cir. 2010) (reviewing an environmental impact statement prepared in connection with a timber sale by a federal agency); *Klamath-Siskiyou Wildlands Ctr. v. Bureau of Land Mgmt.*, 387 F.3d 989, 992–

7

97 (9th Cir. 2004) (same). Again, the relevant statutory language has not changed since *Swanson I*. So again, there is no reason to alter my earlier holding: "failing to sell or offer for sale the annual sustained yield capacit[y]" that BLM has declared for a given year "warrant[s] [judicial] relief under [5 U.S.C.] § 706(2)." *Swanson I*, 951 F. Supp. 2d at 84.

Each side, however, raises an issue that was not addressed in *Swanson I*. First, defendant points out that the RMPs that govern O&C land have changed. When *Swanson I* was decided, the 1995 RMPs were in effect. Those RMPs set district-specific base ASQ volumes and "state[d] that the actual sustainable timber sale level . . . may deviate by as much as 20 percent from the identified [ASQ]." *Swanson I*, 951 F. Supp. 2d at 78 (quotation marks omitted). The annual sustained yield capacity declarations in the 2016 RMPs take similar form—they set a base ASQ for each O&C district and a permissible yearly variance from that base. *See* NCO ROD at 6; SWO ROD at 5–6. BLM marginally increased the O&C lands' overall ASQ in 2016,[4] and it now allows "as much as 40 percent variation" from the ASQ "on an annual basis." NCO ROD at 6; *see also* SWO ROD at 6.

---

[4] Defendant provided a table comparing the ASQ volumes declared in the 1995 RMPs with those declared in the 2016 RMPs:

| District (Sustained Yield Unit) | Total (Acres) | 1995 Matrix (Acres) | 1995 ASQ (MMbf) | 2016 Harvest Land Base (Acres) | 2016 ASQ (MMbf) |
|---|---|---|---|---|---|
| Coos Bay | 309,000 | 62,000 | 27 | 32,989 | 12 |
| Eugene | 314,100 | 69,000 | 33 | 64,618 | 53 |
| Roseburg | 419,000 | 91,000 | 45 | 72,222 | 32 |
| Salem | 398,100 | 62,000 | 35 | 103,968 | 65 |
| Medford | 859,100 | 191,000 | 57 | 186,204 | 37 |
| Klamath Falls | 51,300 | 23,500 | 6 | 37,069 | 6 |
| **Total** | **2,350,600** | **498,500** | **203** | **498,597** | **205** |

Fed. Def.'s Cross-Mot. Summ. J. at 10 (footnote omitted) (citing Hardt Decl. ¶¶ 5–6; U.S. Dep't of the Interior, BLM, *Resource Management Plan Evaluation Report: Western Oregon Districts*, App. 3 at 15, App. 4 at 9, App. 5 at 14, App. 6 at 22, App. 7 at 14, App. 8 at 8 (Aug. 2012) [Dkt. # 57-1]); *see also* NCO ROD at 6; SWO ROD at 5–6; AR_20528; AR_20758; AR_21041; AR_21250; AR_21663; AR_21900.

Defendant argues that BLM's adoption of these new RMPs moots this case. When an agency "rescind[s] and replace[s] a challenged regulation," the general rule is that "litigation over the legality of the original regulation becomes moot." *Akiachak Native Cmty. v. United States Dep't of Interior*, 827 F.3d 100, 113 (D.C. Cir. 2016). Couching this suit as a challenge to the 1995 RMPs, defendant contends that this general rule should apply here. The 1995 RMPs have been "superseded and no longer govern[] BLM actions on the O&C lands." Fed. Def.'s Cross-Mot. Summ. J. at 20. So, according to defendant, any relief that could have been provided for a violation of those RMPs is no longer available.

But defendant misconstrues plaintiffs' case. Neither of the claims remaining in this suit challenge "the legality of [a] . . . regulation." *Akiachak Native Cmty.*, 827 F.3d at 113. Rather, plaintiffs allege that BLM "violated [a] non-discretionary duty" imposed *by the O&C Act*. Corrected Compl. ¶ 100; *see also id.* ¶ 119. Through that statute, Congress requires that BLM set an annual sustained yield capacity and then sell or offer for sale a commensurate amount of timber. *See* 43 U.S.C. § 2601. BLM chooses to discharge the first obligation through the issuance of RMPs, and so long as it does so, RMPs will inform any determination whether BLM is complying with the timber sale mandate. But the duty to sell the timber is imposed by the congressional enactment. Rescinding the 1995 RMPs does not moot the question whether BLM has violated or is violating a statutory mandate.

In any event, notwithstanding the general rule that repealing a regulation ends litigation over it, agencies cannot moot a case by rescinding a challenged policy, then "replacing it with one that differs only in some insignificant respect." *Northeastern Fla.*

*Chapter of the Associated Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 662 (1993); *see also Am. Freedom Def. Initiative v. WMATA*, 901 F.3d 356, 362 (D.C. Cir. 2018) (holding that a case is not moot after defendant "repeal[ed] the challenged Moratorium, but . . . replaced the Moratorium with a policy that is fundamentally similar"). The 2016 RMPs are, for the purposes of this suit, materially similar to their 1995 predecessors. BLM set an annual sustained yield capacity for each O&C district in the 1995 RMPs, and the O&C Act required it to sell or offer for sale timber in an amount "not less than [those] annual sustained yield capacit[ies]" so long as the 1995 RMPs were in force. 43 U.S.C. § 2601. BLM set similar district-based annual sustained yield capacities in the 2016 RMPs, *see supra* p. 8 n.3, and the O&C Act still requires that BLM sell or offer for sale a commensurate amount of timber. Because plaintiffs purchase timber from BLM, they were harmed when BLM failed to sell the statutorily required volume of timber from 1995 through 2015. And they are harmed "in the same fundamental way," *Northeastern Florida*, 508 U.S. at 662, when BLM fails to comply with the O&C Act's timber sale mandate today. In circumstances like these, the Supreme Court has made clear that a "case is not moot." *Id.* at 663.

Plaintiffs raise a second issue that was not addressed in the *Swanson I* opinion. It, too, concerns BLM's RMPs. In short, plaintiffs take issue with BLM's decision in the RMPs to declare each district's sustained yield capacity as a *range* that includes a permissible degree of variance from the base ASQ. They contend that "BLM must offer [for sale] 100 percent of the declared annual capacity every year—not 60 percent, 70 percent or 80 percent." Pls.' Mot. Summ. J. at 31 [Dkt. # 54].

While this argument is new,[5] RMPs that permit a degree of yearly harvest variance are not. In *Swanson I*, with the 1995 RMPs in effect, the annual sustained yield capacity against which I measured BLM's timber sales was a range of permissible volumes. BLM was, at that time, obligated to sell or offer for sale "at least 80 percent of each district's ASQ." *Swanson I*, 951 F. Supp. 2d at 78. Plaintiffs now call this language from *Swanson I* "mistaken[]." Pls.' Mot. Summ. J. at 30. But far from a mistake, the language in the *Swanson I* opinion tracked plaintiffs' own prayer for relief in the case. *See* Am. Compl. at 31, *Swanson I*, No. 10-1843, Dkt. # 16 (Feb. 18, 2011) (seeking "[a]n order directing Defendant . . . to maintain an actual annual timber sale level . . . that is not less than 80 percent of the annual allowable sale quantity for each district"). More importantly, *Swanson I*'s description of the operative annual sustained yield capacity was taken directly from the 1995 RMPs. *See* 951 F. Supp. 2d at 78. The O&C Act compels BLM to sell or offer for sale timber in an amount "not less than the annual sustained yield capacity *when the same has been determined and declared.*" 43 U.S.C. § 2601 (emphasis added). Absent a challenge to BLM's capacity declaration, then, it is that agency declaration that sets the precise sale volume BLM must eclipse each year. Plaintiffs never challenged the validity of the 1995 RMPs in *Swanson I*. And so the annual sustained yield capacity declarations

---

[5] Plaintiffs in *Swanson I* did make a belated attempt to raise a similar argument *after judgment had been entered* in a Motion for Further Relief Under 28 U.S.C. § 2202. *See* Pls.' Mot. for Further Relief Under 28 U.S.C. § 2202 at 8–12, *Swanson I*, No. 10-1843, Dkt. # 73 (Aug. 26, 2013). That motion, which lacked merit for a host of reasons, was summarily denied. *See* Minute Order, *Swanson I*, No. 10-1843 (Dec. 20, 2013). Accordingly, this Court had no occasion to address the permissibility of a yearly harvest variance in *Swanson I*.

in those 1995 RMPs—including the incorporated 20% variance—defined the volume of timber that BLM was obligated to sell for the purposes of this Court's analysis.

The same is true this time around. There can be no dispute that both the 1995 and 2016 RMPs, on their face, declare each O&C district's annual sustained yield capacity as a range, with a permitted amount of annual variance. *See Swanson I*, 951 F. Supp. 2d at 78; NCO ROD at 6; SWO ROD at 6; Hardt Decl. ¶¶ 5–6. Like in *Swanson I*, plaintiffs' complaint here does not challenge the RMPs themselves. *See* Corrected Compl. ¶¶ 97–101, 117–119. And if the complaint were not clear enough, plaintiffs have repeatedly disclaimed any challenge to BLM's RMPs throughout these proceedings. Indeed, in their reply brief in support of summary judgment, plaintiffs described their claims as "based solely on the O&C Act, 43 U.S.C. § 2601, not on any BLM resource management plan." Pls.' Rep. in Supp. of Summ. J. at 8 [Dkt. # 59]. During an unsuccessful attempt to amend their complaint, plaintiffs argued, "nothing in the [proposed] amended complaint in this case challenges the decision to adopt the new resource management plans." *See* Pls.' Rep. in Supp. of Mot. for Leave to File Am. Compl. at 10 [Dkt. # 39]. They even went so far as to claim that their "allegations have nothing to do with the 2016 resource management plans." *Id.* at 11. Having assured defendant, and the Court, that they are not challenging any RMPs, plaintiffs cannot now argue that the sustained yield capacity declarations in the 1995 and 2016 RMPs should not be used to determine whether BLM violated the O&C Act's timber sale mandate. "[T]he annual sustained yield capacity" for O&C land was "determined and declared" in those RMPs. 43 U.S.C. § 2601; *see* NCO ROD at 6; SWO ROD at 5–6. The declarations in those RMPs thus set BLM's required minimum timber

sales, *see* 43 U.S.C. § 2601, and the declarations include both base ASQs and ranges of permissible variance.

That said, even accepting the sustained yield capacity ranges declared in the 1995 and 2016 RMPs, the record establishes that BLM has repeatedly failed to comply with the O&C Act's timber sale mandate. Defendant does not dispute that "BLM sales fell 571.1 mmbf short of the statewide total ASQ from 2009 to 2016, equal to a statewide 35 percent shortfall." Pls.' Mot. Summ. J. at 33 (emphasis omitted). This deficit is well outside the variance permitted by the then-operative 1995 RMPs. *See Swanson I*, 951 F. Supp. 2d at 78; AR_20529. Richard Hardt ("Hardt"), BLM's planning and environmental coordinator in the Oregon-Washington Office, submitted a declaration "acknowledg[ing] [BLM's] long-term departure from the timber management outcomes predicted under the 1995 RMPs." Hardt Decl. ¶ 2. And Hardt goes on to state that BLM has only "committed to offering a volume of timber within the [current] declared ASQ range by fiscal year 2019." *Id.* ¶ 9. This, of course, amounts to a concession that BLM has consistently failed to sell or offer for sale an annual volume of timber that is "not less than the [declared] annual sustained yield capacity" for O&C land. 43 U.S.C. § 2601; *see also Swanson I*, 951 F. Supp. 2d at 78 (identifying timber sale shortfalls in 2004, 2005, 2007, and 2009).

When an agency fails to discharge a statutory duty, as BLM has done here, "the Court may declare the agency's failure to act as unlawful and compel the agency to act." *Swanson I*, 951 F. Supp. 2d at 84 (citing 5 U.S.C. § 706). Defendant has, however, requested that the parties be permitted an opportunity to brief the precise contours of any order compelling it to act before such an order is entered. *See* Fed. Def.'s Cross-Mot.

Summ. J. at 38; *cf. Am. Hosp. Ass'n v. Azar*, 348 F. Supp. 3d 62, 85–87 (D.D.C. 2018) ("Plaintiffs are entitled to equitable relief. Fashioning that relief, however, requires supplemental briefing from the parties addressing the relief's proper scope and implementation."). Because plaintiffs did not raise any argument opposing the request, additional briefing will be permitted. The parties' briefs should detail their respective positions on the proper remedy for the violations of the O&C Act described in this Memorandum Opinion.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART plaintiff's motion for summary judgment and DENIES defendants' cross-motion. The parties are ORDERED to submit supplemental briefs detailing their respective positions on the proper remedy for defendant's violations of the O&C Act. Both parties shall submit their opening briefs on remedy, which shall be limited to no more than fifteen pages each, within thirty days of this Memorandum Opinion's issuance. The parties may then file responsive briefs on remedy, limited to no more than ten pages each, within fourteen days of the filing of their opponent's opening brief. An Order consistent with this decision accompanies this Memorandum Opinion.


RICHARD J. LEON
United States District Judge