UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN FOREST RESOURCE COUNCIL, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Case No. 16-01599 (RJL) |
| MICHAEL D. NEDD, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| ASSOCIATION OF O & C COUNTIES, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Case No. 16-01602 (RJL) |
| MICHAEL D. NEDD, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| SWANSON GROUP MANUFACTURING LLC, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Case No. 15-01419 (RJL) |
| DEBRA A. HAALAND, | ) ) ) | |
| Defendant. | ) ) ) ) | |

1

**MEMORANDUM ORDER**
(November 19, 2021)

The Oregon and California Railroad and Coos Bay Wagon Road Grant Lands Act of 1937 ("O&C Act"), 43 U.S.C. § 2601 *et seq.*, regulates timber harvest on approximately two million acres of federal land in western Oregon ("O&C land"). In these three related cases, plaintiffs challenge decisions made by the U.S. Department of the Interior ("Interior") and the Bureau of Land Management ("BLM")—the agencies responsible for administering the O&C Act—arguing that the agencies unlawfully reduced the amount of timber available for harvest from O&C land.[1]

In all three cases, plaintiffs contend the Government violated the plain text of the O&C Act, which mandates the Government annually sell or offer for sale timber from the O&C land in an amount "not less than the annual sustained yield capacity [of the land] when the same has been determined and declared." 43 U.S.C. § 2601. I agreed, granting plaintiffs in Case Number 15-1419 partial summary judgment on September 29, 2019 and granting plaintiffs in Case Numbers 16-1599 and 16-1602 summary judgment on November 22, 2019 (collectively the "Memorandum Opinions").[2] *See Swanson Grp. Mfg.*

---

[1] In Case Number 15-1419, after numerous plaintiffs were dismissed for lack of standing, two lumber companies pursued a suit against the Secretary of the Interior alleging repeated violations of the O&C Act. In Case Numbers 16-1599 and 16-1602, the American Forest Resource Council (a forest products trade association representing lumber and plywood manufacturing companies), the Association of O&C Counties (which represents seventeen counties in western Oregon that contain O&C land), and several entities engaged in business related to the timber industry sued the Secretary of the Interior and the Director of BLM alleging that Resource Management Plans issued by BLM in 2016 governing timber production on the O&C land ("the 2016 RMPs") were arbitrary, capricious, and contrary to law. Throughout this Memorandum Order, "plaintiffs" will refer to the collective plaintiffs in all three cases. "Defendants," "the Government," or the "United States" will refer to the collective named defendants.

[2] These decisions explain the factual and procedural background of these cases in greater detail.

*LLC v. Bernhardt*, 417 F. Supp. 3d 22, 24 (D.D.C. 2019); *Am. Forest Res. Council v. Hammond*, 422 F. Supp. 3d 184, 187 (D.D.C. 2019).

In doing so, I held that the O&C Act "conveys a clear requirement: once BLM declares an annual sustained yield capacity[3] [for the O&C land], it must sell that amount of timber or so much thereof as can be sold at reasonable prices on a normal market every year."[4] *Swanson Grp. Mfg.*, 417 F. Supp. 3d at 26 (cleaned up); *see also Am. Forest Res. Council*, 422 F. Supp. 3d at 189–90. I concluded that BLM repeatedly failed to comply with this statutory mandate, including by refusing to sell or offer for sale the annual sustained yield capacity and by issuing Resource Management Plans ("the 2016 RMPs") that excluded portions of the O&C timberland from the calculation of the annual sustained yield capacity. *Swanson Grp. Mfg.*, 417 F. Supp. 3d at 30 ("[T]he record establishes that BLM has repeatedly failed to comply with the O&C Act's timber sale mandate"); *Am. Forest Res. Council*, 422 F. Supp. 3d at 190 ("The 2016 RMPs violate the[] mandatory directives [of the O&C Act] by excluding portions of O&C timberland from sustained yield timber harvest."). As a result, I held plaintiffs were entitled to relief, but I permitted the parties to submit supplemental briefing regarding the precise contours of the appropriate

---

Familiarity with these decisions is presumed. The full background of each case will not be repeated here.

[3] Defendants use "annual productive capacity," "allowable sale quantity," and "annual sustained yield capacity" interchangeably to refer to the productive capacity of the O&C land. *See Am. Forest Res. Council*, 422 F. Supp. 3d at 187 n.4. I adopt that usage here but refer primarily to the annual sustained yield capacity. 43 U.S.C. § 2601.

[4] This conclusion follows directly from the statute's text, which states that O&C land "shall be managed . . . for permanent forest production," and that the "timber thereon shall be sold, cut, and removed in conformity with the principal of sustained yield." 43 U.S.C. § 2601. To achieve this, the statute provides that "[t]he annual productive capacity for [O&C land] shall be determined and declared" and that "timber from said lands in an amount . . . not less than the annual sustained yield capacity . . . *shall be sold annually*, or so much thereof as can be sold at reasonable prices on a normal market." *Id.* (emphasis added).

3

remedy. *See Swanson Grp. Mfg.*, 417 F. Supp. 3d at 30–31; *Am. Forest Res. Council*, 422 F. Supp. 3d at 191–92. That briefing is now complete, and this Memorandum Order provides the remedy in all three cases.

Under Section 706(1), the APA provides relief for agency action unlawfully withheld by instructing courts to "compel" the action in question. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004). The imperative nature of the provision not only empowers, but *requires*, courts to issue orders mandating agency action when it is unlawfully withheld. *See Inv. Co. Inst. v. Fed Deposit Ins. Corp.*, 728 F.2d 518, 522 (D.C. Cir. 1984); *see also Solenex LLC v. Jewell*, 156 F. Supp. 3d 83, 84 (D.D.C. 2015).

Relatedly, under Section 706(2)(a), the APA directs courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law." 5 U.S.C. § 706(2)(A). Ordinarily, "when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards." *N. Carolina Fisheries Ass'n, Inc. v. Gutierrez*, 550 F.3d 16, 20 (D.C. Cir. 2008). In certain circumstances, however, a reviewing court may issue detailed remedial orders. *Id.* Such orders serve an important function in ensuring "the court . . . not abdicate its responsibility to ensure that its instructions are followed." *Cobell v. Norton*, 240 F.3d 1081, 1109 (D.C. Cir. 2001).

Plaintiffs here seek a variety of relief. They request an order (1) requiring BLM to annually sell or offer for sale the declared annual sustained yield capacity; (2) vacating the

2016 RMPs, at least partially, and requiring BLM to revise[5] the 2016 RMPs on an accelerated timetable and within the confines of specific directives; (3) providing interim relief in the form of minimum prescribed timber sales; and (4) retaining jurisdiction to oversee BLM's implementation of the relief ordered.[6] *See* Pls.' Consol. Remedy Br. ("Swanson Pls.' Br."), 15cv1419, [Dkt. #74]; Remedy Br. for Assoc. of O&C Counties ("O&C Pl.'s Br."), 16cv1602, [Dkt. #51].

Defendants disagree on all counts. They contend that in light of potential disruptions to the existing regulatory scheme and the uncertain timing of any revisions, the Court should refrain from vacating the 2016 RMPs, setting a firm timeline for their revision, issuing interim relief, or retaining jurisdiction. *See* Fed. Defs.' Supp. Br. on Remedy ("Fed. Defs.' Br., 16cv1599"), 16cv1599, [Dkt. #60]; Fed. Def.'s Supp. Br. on Remedy ("Fed. Def.'s Br., 15cv1419"), 15cv1599, [Dkt. #75]. I believe a combination of these proposals is appropriate. How so?

### A. Requiring Sale of the Annual Sustained Yield Capacity

Plaintiffs' first request is plainly warranted. As I held in the Memorandum Opinions, the O&C Act conveys a "clear requirement" that, subject to limited exceptions, BLM sell or offer for sale the annual sustained yield capacity of the O&C land every year.

---

[5] "Revise" as used here and throughout this Memorandum Order is not intended to restrict defendants' discretion regarding how to bring the 2016 RMPs into compliance with the O&C Act and this Court's Memorandum Opinions. Nothing in this Memorandum Order requires revising the 2016 RMPs under 43 C.F.R. § 1610.5-6 as opposed to amending the plans, *see* 43 C.F.R. § 1610.5-5, or replacing them altogether.

[6] Plaintiffs in Case Numbers 15cv1419 and 16cv1599 present their proposed remedy in a consolidated brief, while plaintiff in Case Number 16cv1602 presents its proposed remedy in a separate submission. There are certain distinctions between the details of each proposal, but the tenants described above are common to both.

*Swanson Grp. Mfg.*, 417 F. Supp. 3d at 26; *Am. Forest Res. Council*, 422 F. Supp. 3d at 189–90. BLM repeatedly failed to comply with this statutory directive, *Swanson Grp. Mfg.*, 417 F. Supp. 3d at 26, warranting relief in the form of an order mandating the conduct unlawfully withheld. *See South Carolina v. United States*, 907 F.3d 742, 756 (4th Cir. 2018) ("[I]f a party has successfully demonstrated an unlawfully withheld agency action . . ., the court must enter an appropriate order and secure the agency's compliance with the law."). Accordingly, I will order BLM to comply with the O&C Act's directives on a prospective basis.[7]

### B. Vacatur and Revision of the 2016 RMPs

Plaintiffs next request detailed relief regarding the 2016 RMPs and the revisions thereto. Plaintiffs concede that the 2016 RMPs should remain largely intact on remand but request what amounts to immediate vacatur of certain wildlife provisions so that these will not apply during the interim period in which revised plans are formulated.[8] Plaintiffs also request that the Court issue certain "directives" stating that, in revising the 2016 RMPs,

---

[7] Defendants seek to avoid the clear implication of the statutory interpretation announced in the summary judgment decisions by arguing that *declaratory* relief is appropriate but "injunctive" or "mandamus" relief in the form of an order mandating the Congressionally required timber sales at issue is inappropriate. *See* Fed. Def.'s Br., 15cv1419, at 1–4. This is hardly the case. The power to compel defendants to perform the statutorily mandated conduct in question stems directly from the APA. *See* 5 U.S.C. § 706(1) ("The reviewing court shall . . . compel agency action unlawfully withheld."). It is not rooted in mandamus or equitable considerations alone and need not meet the more stringent requirements of those doctrines. *Cf. Citizens for Responsibility & Ethics in Washington v. SEC*, 916 F. Supp. 2d 141, 152 (D.D.C. 2013) (mandamus not available where APA supplies an adequate remedy). Moreover, it is troubling that defendants seek a remedy whereby the Court proclaims what the law requires but does not actually hold defendants to meeting that standard after a history of failing in this regard.

[8] Plaintiffs arrive at the same practical result in different ways. Plaintiffs in Case Numbers 15cv1419 and 16cv1599 seek an immediate vacatur of only the wildlife provisions. Swanson Pls.' Br. at 12–15. Plaintiff in Case Number 16cv1602 argues for an immediate vacatur of the entire 2016 RMPs but with a partial stay of vacatur applying to the entire 2016 RMPs *except* the wildlife provisions. *See* O&C Pl.'s Br. at 4–7.

defendants must set the annual sustained yield capacity at no less than 500 million board feet ("mmbf") and must not consult with other agencies under Section 7(a)(2) of the Endangered Species Act. O&C Pl.'s Br. at 7–9; Swanson Pls.' Br. at 12–15.

When considering whether to vacate, courts look to the seriousness of the deficiencies in the agency action and "the disruptive consequences of an interim change." *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993). These considerations point in opposite directions here. As explained in the summary judgment decisions, the deficiencies in the 2016 RMPs are significant. The Government repeatedly failed to abide by clear statutory mandates over a period of many years, depriving plaintiffs of the lion's share of a Congressionally mandated benefit. *Swanson Grp. Mfg.*, 417 F. Supp. 3d at 30; *Am. Forest Res. Council*, 422 F. Supp. 3d at 190–91. Moreover, this is not a case where on remand the Government is likely to develop a reasoned explanation for its action. *See Allied-Signal, Inc.*, 988 F.2d at 151 (declining to vacate where there was "at least a serious possibility" that the agency would substantiate its decision on remand). As such, the first factor would ordinarily favor vacatur.

But here, all parties recognize and seek to avoid the significant disruptive consequences that would occur should the 2016 RMPs be vacated entirely without replacement plans in place. *See* O&C Pl.'s Br. at 5; Swanson Pls.' Br. at 13. To say the least, revising the 2016 RMPs to comply with the O&C Act will be a complicated endeavor "involving many actors and interrelated decision-making processes." Fed. Defs.' Br. at 8. Vacating the 2016 RMPs while this process is completed would leave the O&C lands in a state of unregulated confusion or, at best, have the counterproductive result of reinstating

7

the prior set of RMPs issued in 1995, which contain many of the same essential flaws as the 2016 RMPs. *See* O&C Pl.'s Br. at 5. Such an approach would only further jeopardize statutorily mandated timber sales and, as such, will not be adopted here. Instead, I will vacate the 2016 RMPs in their entirety, but stay the imposition of this vacatur until defendants have developed and implemented revised RMPs consistent with the O&C Act and this Court's Memorandum Opinions. *See Nat. Res. Def. Council, Inc. v. EPA*, 301 F. Supp. 3d 133, 145 (D.D.C. 2018).

### a. Wildlife Provisions

Plaintiffs ask this Court to go further and limit the stay to exclude certain portions of the RMPs, effectively precluding defendants from following certain provisions in the interim period while revisions are prepared. Specifically, plaintiffs urge the Court to exclude from the stay "any portion of the 2016 RMPs that would interfere with complying with the remand order and the statutory mandate of the O&C Act based on the Endangered Species Act." O&C Pl.'s Br. at 6; Swanson Pls.' Proposed Remedy Order, 15cv1419, [Dkt. #74-4] ¶ 4 (effectively seeking the same result). These portions of the 2016 RMPs include primarily the wildlife provisions found at pages 95-102 of the Northwestern and Coastal Oregon Record of Decision/RMP and pages 115-121 of the Southwestern Oregon Record of Decision/RMP ("Wildlife Provisions"). *See* JA-1_IND_0512797–804, JA-2_IND_0513137–43. These Wildlife Provisions aim to incorporate obligations under the ESA as well as the Migratory Bird Treaty Act and the Bald and Golden Eagle Protection Act into the management of the O&C land. *Id.* To this end, they impose conservation-based requirements that, admittedly, may restrict the harvest of timber and the fulfillment

of statutory obligations under the O&C Act.

But the extent to which these management objectives must be modified or abandoned altogether in light of this Court's interpretation of the O&C Act is a matter best resolved by the agency in the first instance. *See Refiner Lead Phase-Down Task Force v. EPA*, 705 F.2d 506, 545 (D.C. Cir. 1983). As defendants point out, the Memorandum Opinions did not entirely eliminate BLM's obligations with respect to the ESA. *See Am. Forest Res. Council*, 422 F. Supp. 3d at 190 ("The Government may be correct that BLM must fulfill conservation duties imposed by other statutes when exercising its discretion under the O&C Act." (internal quotation marks and citations omitted)). Nor did the Memorandum Opinions discuss the Migratory Bird Treaty Act or the Bald and Golden Eagle Protection Act *in any capacity*. On remand, defendants will have to consider carefully what, if any, of the Wildlife Provisions remain permissible and appropriate in light of their obligations under the O&C Act. But it would be premature at this juncture to grant plaintiffs' requested relief when such agency obligations have not been explored in anything but a cursory fashion and alternative remedial action is available. *See Shands Jacksonville Med. Ctr. v. Burwell*, 139 F. Supp. 3d 240, 270 (D.D.C. 2015) (denying vacatur despite serious deficiencies in light of "the Court's assessment of the overall equities and practicality of the alternatives," including the availability of expedited agency reconsideration).

### b. Specific Directives

For similar reasons, I find plaintiffs' requested "directives" inappropriate at this time. Plaintiffs seek a Court-imposed mandate (1) requiring BLM to sell no less than 500

9

mmbf each year and (2) precluding BLM from consulting with other agencies under Section 7(a)(2) of the ESA in the process of revising the 2016 RMPs. O&C Pl.'s Br. at 7–9; Swanson Pls.' Br. at 13–14. With respect to the minimum timber requirement, plaintiffs draw on the O&C Act to arrive at the 500 mmbf number. Swanson Pls.' Br. at 14. Although the statute mentions a minimum requirement of 500 mmbf, that provision applied only for the brief period *prior* to the first determination and declaration of the annual sustained yield capacity. See 43 U.S.C. § 2601. Plaintiffs do not dispute that BLM has, long ago, determined and declared the annual sustained yield capacity. Nor do plaintiffs dispute, as the summary judgment decisions made clear, that BLM retains discretion to determine and declare the annual sustained yield capacity going forward. *See Am. Forest Res. Council*, 422 F. Supp. 3d at 190 ("BLM has discretion as to establishing the ASQ"). Accordingly, neither the statute nor this Court's opinions offer any support for plaintiffs' position. On remand, BLM will have to apply its expertise to revise the 2016 RMPs consistent with the Memorandum Opinions—a process that will almost certainly result in an upward revision of the annual sustained yield capacity. But in the interim, there is no basis, statutory or otherwise, for the imposition of an essentially arbitrary minimum requirement.

With respect to consultations, plaintiffs also read too much into the Memorandum Opinions. In granting plaintiffs summary judgment, I reiterated that BLM maintains discretion to perform certain functions with respect to the O&C land, including in "establishing the ASQ, selecting the timberlands, pricing the sale, . . . scheduling the sale, and even rejecting bids," *see Am. Forest Res. Council*, 422 F. Supp. 3d at 190. In performing such discretionary functions, it may be necessary for the Government to consult

under Section 7(a)(2) of the ESA. *Id.* at 191. While that provision is not an excuse to avoid BLM's obligation to comply with the mandatory sustained yield principles of the O&C Act, *see id.*, it would be premature to conclude that in revising the 2016 RMPs, the Government will have *no* reason to perform any ESA consultations in the exercise of a discretionary function. Accordingly, I will permit consultations subject to certain time-restraints explained below.

### C. Interim Relief

Plaintiffs next seek interim relief in the form of mandatory minimums to govern timber sales. Swanson Pls.' Br. at 15; O&C Pl.'s Br. at 9–14. I find such drastic judicial relief unjustified at present. Plaintiffs' submissions lack specificity regarding how the proposed relief could be practically achieved given the significant time involved in planning and organizing timber sales, *see* Second Linares Decl., 16cv1599 [Dkt. #62-1] ¶ 13 (averring timber sales take approximately three to five years), and, in any event, ordering specific minimum timber requirements would surely "intrud[e] upon the administrative province" in a manner unjustified by equitable concerns at this time. *Ind. & Mich. Elec. Co. v. Fed. Power Comm'n*, 502 F.2d 336, 346 (D.C. Cir. 1974).

### D. Timing and Jurisdiction

Defendants should not, however, take the Court's reluctance to unduly curtail defendants' discretion or order interim relief as a blank check to proceed in any manner and at any pace. *See Natural Res. Def. Council v. EPA*, 489 F.3d 1250, 1262–64 (D.C. Cir. 2007) (cautioning against agencies treating a remand as an "indefinite stay of the effectiveness of the court's decision"). "There comes a point when relegating issues to

11

proceedings that go on without conclusion in any kind of reasonable time frame is tantamount to refusing to address the issues at all and the result is a denial of justice." *Jewell*, 156 F. Supp. 3d at 84 (quoting *Nader v. F.C.C.*, 520 F.2d 182, 206 (D.C. Cir. 1975)). In light of BLM's long-running failure to comply with its obligations under the O&C Act and its repeated inability to ensure timber sales sufficient to meet the declared annual sustained yield capacity, I will retain jurisdiction in this case and require periodic status reports on the progress of revisions. *See Cobell v. Norton*, 240 F.3d 1081, 1109 (D.C. Cir. 2001) ("[F]ederal courts regularly retain jurisdiction until a federal agency has complied with its legal obligations, and have the authority to compel regular progress reports in the meantime.").

The first of these reports will occur within 120-days, at which time the Government will be required to report on what aspects, if any, of the Wildlife Provisions remain permissible in light of the Court's Memorandum Opinions. Defendants must also complete all necessary consultations under Section 7(a)(2) of the ESA by this time. If extraordinary circumstances prevent the Government from completing these tasks in a timely manner, it must, prior to the deadline, provide a detailed description of those circumstances and demonstrate good cause for an extension.

The next of these reports will occur within one year, at which time the Court expects substantial progress toward the revision of the 2016 RMPs to have been accomplished. In this status report, defendants will be required to provide details regarding future planned timber sales and efforts made to ensure that, even in the interim period, as much of the declared annual sustained yield capacity as possible is being offered for sale. Should such

efforts be inadequate, the Court retains jurisdiction to reconsider the conclusions drawn in this Memorandum Order.

Accordingly, for all the reasons stated above and based upon consideration of the parties' submissions and the entire record herein, it is hereby

**DECLARED** that defendants have unlawfully withheld mandatory agency action in failing to sell or offer for sale the declared annual sustained yield capacity of timberlands on the O&C land; it is further

**DECLARED** that the O&C Act imposes on defendants a nondiscretionary obligation to sell or offer for sale the annual sustained yield capacity of timberlands on the O&C land once that amount has been determined and declared, or at least so much thereof as can be sold at reasonable prices on a normal market; it is further

**ORDERED** that defendants shall sell or offer for sale in each future fiscal year no less than the declared annual sustained yield capacity of timber from timberlands on the O&C land, or at least so much thereof as can be sold at reasonable prices on a normal market; it is further

**ORDERED** that the 2016 RMPs are hereby **VACATED** to the extent they are inconsistent with the O&C Act and the Court's Memorandum Opinions, provided that this vacatur is **STAYED** until defendants develop and implement revised RMPs that are consistent therewith; it is further

**ORDERED** that the 2016 RMPs are **REMANDED** to BLM for preparation of RMP revisions consistent with the O&C Act and the Court's Memorandum Opinions; it is further

**ORDERED** that no later than 120 days from the date of this Memorandum Order,

BLM shall submit a status report (1) detailing what, if any, aspects of the Wildlife Provisions remain permissible in light of the O&C Act and this Court's Memorandum Opinions and (2) confirming that all consultations under Section 7(a)(2) of the ESA necessary to revise the 2016 RMPs have been completed; it is further

**ORDERED** that no later than one year from the date of this Memorandum Order, and again every six months thereafter, BLM shall submit a status report explaining the progress made in revising the 2016 RMPs, including but not limited to details regarding future timber sales and efforts made to ensure as much of the declared annual sustained yield capacity as possible is offered for sale during the remand period; it is further

**ORDERED** that BLM shall notify the Court and the plaintiffs upon completion of revisions to the 2016 RMPs; it is further

**ORDERED** that within 45 days of the filing of any status report or notice by BLM, plaintiffs may raise any objections by submitting a response, in writing, provided that such objections shall be limited to describing the precise ways in which defendants failed to comply with this Memorandum Order or the Memorandum Opinions and requesting additional relief; and it is further

**ORDERED** that the Court retains jurisdiction in this case to oversee compliance with its Orders and Opinions.

**SO ORDERED.**

_/s/ Richard J. Leon_
RICHARD J. LEON
United States District Judge